Howard ORLOVE, d/b/a H. Orlove Company, Plaintiff-Appellee,

v.

PHILIPPINE AIR LINES, Inc., Defendant-Appellant-Appellee, and

The Flying Tiger Line, Inc., Defendant-Appellant.

No. 313, Docket 24929.

United States Court of Appeals Second Circuit.

Argued May 1, 1958.

Decided July 25, 1958.

Joseph R. Cannata, of Hill, Rivkins, Middleton, Louis & Warburton, New York City, for plaintiff-appellee.

Caesar L. Pitassy, of Royall, Koegel, Harris & Caskey, New York City (William F. Koegel, of Royall, Koegel, Harris & Caskey, New York City, on the brief), for Philippine Air Lines, Inc., defendant-appellant-appellee.

George W. Clark, of Mendes & Mount, New York City, and James F. Dwyer, of Satterlee, Warfield & Stephens, New York City (Kenneth R. Thompson, of Mendes & Mount, New York City, on the brief), for Flying Tiger Line, Inc., defendant-appellant.

Before CLARK, Chief Judge, and HINCKS and STEWART, Circuit Judges.

CLARK, Chief Judge.

This appeal concerns the liabilities of two air line companies for the loss of a shipment of gold jewelry sent from New York to Hong Kong. Plaintiff, the shipper, instituted the action against both Philippine Air Lines, Inc. (PAL), and The Flying Tiger Line, Inc. (FTL), but later discontinued it against the latter. Prior to the discontinuance, however, PAL cross-claimed against FTL for indemnification in case plaintiff succeeded in gaining a judgment against it. The district court, sitting without a jury, ruled in favor of the plaintiff against PAL for the full value of the lost jewelry and held FTL liable over to PAL for that judgment. Both air lines appeal.

Although the profusion of contract conditions and tariff provisions cited here and to the district court gives this

case an air of complexity, the relevant facts and issues present no great difficulty. The shipment in question originated on June 10, 1949, in New York. Plaintiff at that time was engaged in the import-export business. He previously had shipped a number of packages containing jewelry to his customers in Hong Kong through the facilities of PAL, which furnished freight service between San Francisco and Hong Kong. PAL was not licensed to operate between points in the United States, however, and freight shipments originating in New York City were carried to San Francisco by FTL under an Interline Cargo Traffic Agreement between the companies on file with the Civil Aeronautics Board pursuant to 49 U.S.C. § 492.

Plaintiff dealt exclusively with PAL. It had followed a uniform practice in arranging for his freight shipments on a number of occasions prior to June 10, 1949. Each time plaintiff wished to make such a shipment he would call the PAL office in New York, giving a clerk there relevant details concerning the shipment. He would then be told the PAL air waybill number assigned to the shipment, which he would note on a form previously given to him by PAL called a "Shipper's Letter of Instructions." The entries on this form required all the information necessary to complete the air waybill, including the name and address of the consignee, a full description of the goods, and declarations of value for both carriage and customs. Then, at the direction of PAL, the plaintiff would deliver his shipment, addressed to the consignee in Hong Kong, to Mercury General Trucking Company, an agent of FTL, to start its progress westward. He would receive a "receipt" for each shipment so delivered in the form of a so-called "Airbill Request & Shipping Order" of "The Flying Tiger Line,

Inc." After this delivery plaintiff would mail the completed Shipper's Letter of Instructions, together with other documents, to the PAL office in New York, to be forwarded to San Francisco. Later PAL would send him the completed air waybill.

On June 10, 1949, the plaintiff followed the same procedure in arranging for the shipment which eventually was lost. He informed Mr. Philiba, a representative of PAL, by telephone that he wished to ship a package of jewelry to Hong Kong. He disclosed the name and address of the consignee, the value of the shipment, and other relevant details; and he was given an air waybill number, which he inserted on the Shipper's Letter of Instructions. Pursuant to Philiba's directions he delivered the package, clearly addressed to the consignee in Hong Kong, to Mercury General Trucking Company, which Philiba said would accept the freight in behalf of PAL. The clerk at Mercury asked him various questions concerning the shipment, but made no inquiry relating to its value. The plaintiff had not been told by PAL to give this information, and he did not volunteer it. While the address on the package thus indicated that it was for export, the clerk at Mercury made no effort to obtain copies of the Shipper's Letter of Instructions or the invoices and export declarations from the plaintiff, although under the Interline Agreement FTL had agreed with PAL to do so in the case of any shipment for export. These documents, of course, would have disclosed the declared value of the shipment.[1]

After the plaintiff received the usual "receipt" from Mercury, he mailed the completed Shipper's Letter of Instructions, export declarations, and customers' invoices to PAL. PAL sent the plaintiff a completed air waybill the following week. Prior to this, however, the ship-

---

1. Under the Interline Agreement, FTL was under no obligation to obtain documents which would show the value of the shipment if it was for domestic transportation only. As the district court

found, FTL erred here by handling the plaintiff's shipment "document-wise as a domestic transaction instead of an export transaction."

ment had disappeared while in the custody of FTL because of its failure to exercise "due care." PAL claims that it is not liable, because the loss was due to the negligence of FTL. FTL claims that it is not liable for more than a nominal sum, because the plaintiff never declared the value of his shipment to its agent in New York.

■ PAL bases its claim for complete exoneration on various provisions of its tariff on file with the Civil Aeronautics Board and of the Warsaw Convention.[2] The effect of these provisions was to shield PAL from any liability arising from acts or omissions by other carriers which PAL could select to carry out portions of the carriage. PAL argues that this loss occurred on another line and was due to the negligence of another carrier. But these provisions are inapposite, for the district court properly held PAL liable for its own omissions, and not those of FTL. Thus this is not a case of imputed liability.

It is clear that had the plaintiff declared the value of his shipment to the FTL agent in New York, FTL would be liable to the plaintiff for the full value of his loss. But he is precluded from making a direct recovery because of the failure to disclose this necessary information.[3] His loss stems, therefore, from a failure to make proper disclosure. But from the plaintiff's point of view this disclosure was unnecessary. The shipping procedures adopted by PAL led him to believe that once he made a declaration of value to it, he would acquire the desired protection. For the shipment in question the plaintiff made declarations both on the phone on June 10 and in his Shipper's Letter of Instruc-

tions. Without further warning from PAL he was justified in assuming that this was all that was necessary to protect the shipment from New York to Hong Kong. Obviously the plaintiff was not seeking to avoid higher freight rates by this procedure, for he expected and agreed that the declaration to PAL would make the shipment subject to these higher rates. And there is no indication in the record that such a charge would have been limited to the San Francisco-Hong Kong portion of the trip. Under the Interline Agreement it is probable that PAL would have collected the higher freight charge for the whole trip and remitted to FTL the portion due it for carriage from New York to San Francisco.

Under these circumstances PAL was under a duty to the plaintiff to inform FTL of the value of the shipment or at least to inform the plaintiff to declare the value when he delivered the package to Mercury. There would be a clear case of liability had PAL delivered the package to FTL without making the necessary declaration of value.[4] Here plaintiff, in effect, made the delivery for PAL, and its failure properly to instruct him was a breach of duty rendering it liable.

In the alternative PAL contends that the plaintiff's recovery from it must be limited under Article 22(2) of the Warsaw Convention, which provides that "unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum" the carrier's liability is limited to 250 francs per kilogram. In this situation the argument is bold. The obvious purpose of the Article is to

---

2. Convention for the Unification of Certain Rules Relating to International Carriage by Air (Warsaw Convention), 49 Stat.L., Pt. 2, 3000 et seq.

3. The FTL tariff on file with the Civil Aeronautics Board limited its liability unless the shipper declared the value of his shipment and paid an increased freight charge.

4. The provision in the PAL tariff authorizing it "to consign the goods [to another carrier] without declaration of value or with a declaration of value less than the value for carriage declared by the consignor for transportation over the lines of [PAL]" has no application here, where FTL provided a rate schedule for increased liability and its use obviously was contemplated by the parties.

inform the carrier of the risk it assumes in providing carriage for a valuable shipment and to allow it to take the necessary steps to minimize that risk. Here PAL was given the necessary information in precisely the fashion it chose. Moreover the plaintiff literally complied with the Article, for at the time he delivered the package to FTL he had already declared its value and had impliedly agreed to an increased freight charge.

The claim of PAL against FTL presents a more novel problem. Although it was FTL which negligently lost the plaintiff's shipment, PAL is liable because, by failing to take steps to inform FTL of the value of the shipment, it denied plaintiff a direct recovery against FTL. But there is a clear difference in the degree of culpability, and the circumstances warrant the application of the doctrine of primary and secondary liability. Since FTL was the primary wrongdoer and since PAL's liability stems entirely from conduct which deprived the plaintiff of rights against FTL, PAL is entitled to be indemnified. See Banks v. Central Hudson Gas & Elec. Corp., 2 Cir., 224 F.2d 631, certiorari denied 350 U.S. 904, 76 S.Ct. 182, 100 L.Ed. 793; Restatement, Restitution § 94 (1937).[5] FTL's tariff on file with the Civil Aeronautics Board limited its liability unless FTL was informed of the value of the shipment. This aspect of the filed tariff does not bar PAL's claim here, however, since its use as a defense against PAL is in effect waived by FTL's agreement under the Interline Agreement to request from the shipper documents which would have disclosed the shipment's special value.

Judgment affirmed.

5. The Supreme Court's caution in Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 569, 78 S.Ct. 438, 442, 2 L.Ed.2d 491, that theories of primary or secondary negligence are inappropriate "in the area of contractual indemnity," is inapplicable here, where PAL's right of indemnity arises by operation of law. Respondent's right of indemnity in Weyerhaeuser was "of the essence of petitioner's stevedoring contract," and "not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship." See Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 133, 76 S.Ct. 232, 237, 100 L Ed. 133; Weyerhaeuser S. S. Co. v. Nacirema Operating Co., supra, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491.