MAVIRAZON COMPANIA NAVIERA, S. A.

v.

H. J. BAKER & BRO., INC. and Atlantic & Gulf Stevedores, Inc.

Civ. A. No. 78–3529.

United States District Court, E. D. Louisiana, New Orleans Division.

Aug. 13, 1980.

Robert B. Fisher, Jr., Roderick M. Mc-Faull, New Orleans, La., for plaintiff.

Ralph E. Smith, New Orleans, La., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Findings of Fact

BEER, District Judge.

1. The M/V CONSTANTINOS, owned and operated by Marvirazon Compania Naviera, S.A., is an ocean-going general cargo vessel.

2. Atlantic & Gulf Stevedores, Inc. is an independent stevedoring company which, at all times pertinent, performed stevedoring services aboard the vessel in April, 1977.

3. Prior thereto, on May 30, 1976, the vessel was inspected in dry dock and lying afloat for purpose of class renewal, and her classification was renewed by German Lloyd from June, 1976.

4. Thereafter, in November, 1976, the CONSTANTINOS underwent repairs to several of her hull plates while in dry dock, in Mobile. Local German Lloyd's representative, Olaf H. Olsen & Son, Inc., attended these repairs, inspected the vessel on November 30, 1976, and issued a certificate confirming her retention in class.

5. Between March, 1976 and April, 1977, the CONSTANTINOS completed a substantial number of voyage charters which involved carriage of various cargos from various ports.

6. Thereafter, a charter party was agreed to in New York in March, 1977, between Marvirazon Compania Naviera, S.A. and H. J. Baker & Bros. (hereinafter "Baker"), to cover the next voyage of the CONSTANTINOS, which was to transport a cargo of phosphate rock in bulk from Curacao to the New Orleans area.

7. The CONSTANTINOS subsequently arrived in Curacao, loaded phosphate rock and sailed to New Orleans in April, 1977.

8. Smith & Johnson, on behalf of charterers, made arrangements with the New Orleans Public Bulk Terminal, operated by Atlantic & Gulf Stevedores, Inc., to discharge the vessel.

9. Following receipt of instructions from Smith & Johnson to proceed to the Public Bulk Terminal, while en route from Curacao, the CONSTANTINOS arrived in New Orleans on Friday, April 15, 1977, and moored at the Public Bulk Terminal.

10. The Atlantic & Gulf Stevedores commenced discharging the phosphate rock from the CONSTANTINOS on April 16, 1977.

11. During discharge of the cargo by Atlantic & Gulf, who utilized heavy grabs and bulldozers, damage was caused to the

vessel by the stevedores, which was observed by the master and chief officer of the CONSTANTINOS. The master, Captain John Stephanou, placed the stevedores on written notice for the damages upon completion of discharge on April 16.

12. Following the damage, charterer's agents, Smith & Johnson, arranged for a joint survey of the damage to be attended by the vessel's classification surveyor, and surveyors representing Atlantic & Gulf Stevedores and Baker.

13. On Sunday, April 17, 1977, the vessel's damages were surveyed by German Lloyd representative, Mr. Olaf H. Olsen, III, with surveyor Charles Riemer, representing the stevedores and a Boland Marine & Manufacturing, Inc. representative in attendance.

14. CONSTANTINOS shifted from the Galvez Street Wharf to the New Orleans General Anchorage on April 17 and from the general anchorage to the Boland repair yard on April 20. The vessel underwent repairs by Boland from Thursday, April 21, through Monday, April 25, and sailed for Houston, Texas, on Tuesday, April 26.

15. In connection with his survey and inspection of the CONSTANTINOS, Mr. Olaf H. Olsen, III, of German Lloyd, issued his survey report no. 1375/A–77, dated May 20, 1977. Additionally, Mr. Olsen issued a German Lloyd survey report certificate following his inspection of repair of the stevedore damage, which certificate noted the satisfactory completion of repairs and confirming that the vessel was retained in class.

16. Repairs to the CONSTANTINOS necessitated by the damage caused by the Atlantic & Gulf Stevedores during discharge on April 16, are:

(1) Repair costs (Boland Marine & Manufacturing Co., Inc.)—$9,500.

(2) Agency fees and disbursements (survey, wharfage, pilotage, tugs and other incidental expenses)—$2,500.

### Conclusions of Law

1. This court has jurisdiction over the subject matter and the parties in the suit and venue is proper.

2. Atlantic & Gulf Stevedores, Inc., as discharging stevedores, had a duty to perform the loading operations aboard the M/V CONSTANTINOS properly and in a workmanlike manner. *Ryan Stevedoring Company v. Pan Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); *Weyerhauser Steamship Co. v. Nacirema Operating Co.*, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958).

3. This implied duty or warranty to perform stevedoring services properly or in a workmanlike manner is owed the shipowner, even when there is no direct contractual relation between the shipowner and the stevedore. *Crumady v. Joachim Hendrick Fisser*, 358 U.S. 423, 3 L.Ed.2d 413, 79 S.Ct. 445 (1959); *Waterman Steam Ship Corp. v. Dugan & McNamara, Inc.*, 364 U.S. 421, 5 L.Ed.2d 169, 81 S.Ct. 200 (1960).

4. The stevedore's duty is an obligation to perform its duties properly and safely. *Parfait v. Jahncke Services, Inc.*, 484 F.2d 296 (5th Cir. 1973); *Garner v. Cities Service Tanker Corp.*, 456 F.2d 476 (5th Cir. 1972).

5. Plaintiff, Marvirazon Compania Naviera, S.A., has proven by a preponderance of the evidence that Atlantic & Gulf Stevedores negligently discharged this obligation while discharging the bulk cargo, and that such negligence proximately caused certain damage to the M/V CONSTANTINOS.

6. Plaintiff has established with reasonable certainty the damage caused by Atlantic & Gulf Stevedores, Inc. and is entitled to recover same. *Tug June S. v. Bordagain Shipping Co.*, 418 F.2d 306 (5th Cir. 1969).

7. Agency disbursements, on behalf of a vessel owner, are considered incidental damages in cases of collision or stevedore damage and are recoverable, provided they are reasonable and incur as a result of the damage complained of. *The Conqueror*, 166 U.S. 110, 17 S.Ct. 510, 41

L.Ed. 937 (1897); *United States v. John R. Williams*, 144 F.2d 451 (2nd Cir., 1944). A part of plaintiff's claim for tugs, wharfage, pilotage, launch hire and other incidental agency fees and disbursements were incurred as a result of the stevedore damage, and are recoverable.

8. In the absence of actual notice or contract, limitation of liability clauses set out in tariffs are not enforceable. Further, the filing of such tariffs with the Federal Trade Commission gives constructive notice only of those things where are required by law to be inserted in the tariff. *La Salle Machine Tool v. Maher Terminals*, 452 F.Supp. 217 (D.Md.1978), aff'd, 611 F.2d 56 (4th Cir. 1979); *Federal Commerce & Navigation Co. v. Calumet Harbor Terminals*, 542 F.2d 437 (7th Cir. 1976).

On the basis of the foregoing, counsel for Mavirazon Compania Naviera, S.A. is instructed to prepare a judgment consistent with these findings of fact and conclusions of law. Interest shall be computed at the legal rate from the date of judicial demand and each party is to bear its own costs.