OPINION OF THE COURT
Harold Tompkins, J.
This is a cargo damage claim concerning a shipment of 25 drums of Brazilian cold-pressed lime oil, shipped from Santos, Brazil, to the Port of New York aboard the defendant’s vessel Minerva in July, 1979.
Plaintiff paid the firm of Fritzche-Dodge & Olcott, the consignee, $3,854.45 for damage to the contents of one of the drums in the shipment. It is therefore subrogated to the rights of its assured to bring this action under the terms of the insurance policy issued by plaintiff to Fritzche-Dodge & Olcott.
FACTS
The essential facts are not in dispute. Fritzche-Dodge & Olcott purchased the shipment at issue from George Uhe Co., which acted as agent for the shipper, for $85,581.90 under terms that required payment against receipt of *517 shipping documents. George Uhe Co. had purchased the shipment from Citrosuco Paulista S/A, the shipper in Brazil, for $80,859.38.
The bill of lading, dated July 13, 1979 and prepared in Santos, Brazil, indicates that the shipper, Citrosuco Paulista S/A furnished the following particulars with respect to the shipment: “25 drums said to contain 4,312.5 kilos net of Brazilian Taiti Lime Oil Cold Pressed gross weight 4,700.0 kg., FOB US $80,859.38.” There are also what appear to be two stamps on the bill, one reading “said to contain” and the other stating “contents of packages are shippers declaration”. Testimony was unclear whether these stamps were applied by the shipper or the carrier at Santos.
Contained in the lower portion of the bill of lading are the various carrying charges. A $218.50 per ton freight charge is shown along with a 17% Bunker surcharge and 1 % ad valorem charge.
No exceptions regarding damage to the drums or unusual characteristics of the drums are indicated on the bill of lading.
Upon arrival of the Minerva in New York one drum in the shipment was empty and the tally sheet prepared on the pier so indicated.
CONTENTIONS
Plaintiff asserts that a prima facie case has been made out for recovery of the value of the emptied drum by the introduction into evidence of a clean bill of lading and proof that a drum was empty upon arrival at the cargo’s destination. Plaintiff also claims that the statutory $500 limitation on a carrier’s liability has been avoided by a declaration of the cargo’s nature and value of the bill of lading made by the shipper. (Carriage of Goods by Sea Act, US Code, tit 46, § 1300 et seq. [COGSA].)
Defendant claims that the plaintiff has not made out a prima facie case since a clean bill of lading is not prima facie evidence of the condition of concealed goods, but only prima facie evidence of the external condition of the shipment, in this case the drums. Defendant also contends that *518 the $500 limitation of liability under subdivision (5) of section 1304 of COGSA applies to this shipment. This contention is based upon provisions of defendant’s tariff on file with the Federal Maritime Commission which defendant claims limit liability to $500 notwithstanding the shipper’s declaration of value in the bill of lading.
THE PRIMA FACIE CASE
A plaintiff’s case for cargo damage and loss is proven prima facie by proof of the receipt by the carrier of the cargo at the port of loading in good order and condition and delivery by the carrier at destination in a damaged condition. (Gerber & Co. v SS Sabine Howaldt, 310 F Supp 343; Vana Trading Co. v S. S. “Mette Skou”, 556 F2d 100, cert den sub nom. Flota Mercante Grancolombiana v Vana Trading Co., 434 US 892.)
A “clean” bill of lading such as the one introduced in evidence by plaintiff at this nonjury trial constitutes prima facie evidence of the receipt by the carrier of the goods therein described. (COGSA, § 1303, subd [4].)[1] Plaintiff argues that pursuant to this statute it has established a prima facie case of cargo damage while the goods were in defendant’s possession. Defendant counters this argument by asserting that, in the case of concealed goods a clean bill of lading is only prima facie evidence of the good condition of the goods based on an external inspection. In other words, the defendant claims that the clean bill of lading is only prima facie proof that the drums, and not the lime oil inside them, were in good condition at loading.
In Caemint Food v Brasileiro (647 F2d 347) the court held that a clean on-board bill of lading generally satisfies the requirement of good order at the time of shipment. (647 F2d, at p 353, n 5.) However, the court indicated that the *519 clean bill of lading merely attests to the apparent good condition of the cargo based on external inspection. (647 F2d, at p 353.) Where the goods are incapable of inspection by external examination the consignee must present extrinsic evidence of the actual good order and condition of the goods at shipment. (See, also, The Niel Maersk, 91 F2d 932, cert den sub nom. Bradley v The Niel Maersk, 302 US 753.)[2]
The loss involved here, unlike that in The Niel Maersk (supra), and Vana Trading Co. v S. S. “Mette Skou” (supra), resulted in a completely empty drum which should easily have been detected.
In the instant case, the defective nature of the shipment should have been readily apparent on external inspection of the drums by reason of the weight differential between a full and empty drum. Evidence introduced at trial demonstrated that a drum filled with lime oil would weigh approximately 450 pounds as opposed to the 60-pound weight of an empty drum. Plaintiff’s proof established that the weight stated in the bill reflected the full shipment of lime oil purchased. It is the court’s determination that this obvious weight difference provides the clean bill of lading with the probative force to establish a prima facie case of cargo damage attributable to defendant. The other requirement for the establishment of a prima facie case, proof of damage at “outturn”, or destination, is not in dispute.
The question of the effect that a declaration of weight in a bill of lading has on a cargo damage claim was recently considered in Westway Coffee Corp. v M. V. Netuno (528 F Supp 113, affd 675 F2d 30). The court held that the weights stated in the bill of lading established prima facie receipt by the carrier of the entire shipment. (See, also, Woodhouse *520 Drake & Carey [Trading] v S. S. “Hellenic Challenger”, 472 F Supp 31.)
The facts involved in Westway (supra) are similar to those before the court. There a shipment of instant coffee was consigned to Westway Coffee Corp. to be carried by this same defendant. The shipment wás weighed by the shipper prior to delivery to the defendant and the shipper declared the weight of the shipment to the carrier. The carrier then issued a bill of lading which contained the same qualifying language as is provided in the bill of lading before this court such as “said to contain” and “contents of packages are shipper’s declarations”.
The court held that despite the disclaimers stamped on the bill of lading, the weights recited in the bill established prima facie receipt by the carrier of the entire shipment. (Westway Coffee Corp. v M. V. Netuno, supra, p 117.) Caemint Food v Brasileiro (supra) was distinguished by the Westway court on the ground that Caemint involved an inherently concealed vice in the shipment and not an absence of a portion of the cargo. (Westway Coffee Corp. v M. V. Netuno, supra, p 116, n 5.)
This court agrees with the holding in Westway (supra). As the court in that case pointed out, in cases where damage consists of missing cargo and not the cargo’s condition, the carrier has the option of weighing the cargo to verify that it actually contains the consigned goods.
The plaintiff in this action has established prima facie the receipt of the lime oil by the defendant in good condition. The bill of lading prepared by defendant contains the full weight of the shipment with no notation as to missing cargo. This clean bill of lading establishes prima facie receipt by the defendant of the goods therein described. (COGSA, § 1303, subd [4].)
When the consignee has met its initial burden, the burden then shifts to the carrier to establish the existence of one of the COGSA exceptions set forth in title 46 (§ 1304, subd [2]) of the United States Code. The defendant in the instant case has wholly failed to meet this burden. No testimony whatsoever was introduced at trial by the defendant with regard to the measures taken to safeguard *521 this shipment. As in Westway Coffee Corp. v M. V. Netuno (supra) the defendant has'failed to show either a subdivision (2) of section 1304 exception or its freedom from negligence. (Westway Coffee Corp. v M. V. Netuno, supra, p 117, citing Nissho-Iwai Co. v M/T Stol tLion, 617 F2d 907.) Hence, plaintiff’s prima facie showing has not been rebutted and plaintiff is entitled to its damages.
THE $500 LIMITATION OF LIABILITY UNDER COGSA
Subdivision (5) of section 1304 of COGSA provides that “[a] carrier * * * shall [not] become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package * * * unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.”
Here the nature (lime oil) and the value (F.O.B. $80,859.38) were inserted in the bill of lading.
Notwithstanding this declaration, and apparent compliance with subdivision (5) of section 1304 of COGSA, defendant claims that liability is limited to $500 pursuant to the provisions of its tariff on file with the Federal Maritime Commission.[3]
The defendant contends that the declaration of value in the bill of lading was made for purposes of assessing the freight rate, pursuant to its tariff, and not to avoid the $500 limit on liability.
Subdivision (8) of section 1303 of COGSA is clear in providing that “[a]ny clause, covenant, or agreement in a contract of carriage relieving the carrier * * * from liability * * * shall be null and void and of no effect.” Furthermore, the purpose of Congress in enacting COGSA was to *522 counterbalance attempts by carriers, as the drafters of bills of lading, to exonerate themselves from liability for lost or damaged cargo. (General Elec. Co. v M. V. Lady Sophie, 458 F Supp 620.) Exculpatory terms of tariffs should be narrowly construed. (Herd & Co. v Krawill Mach. Corp., 359 US 297.) Absent actual notice of tariff provisions, limitation of liability clauses set out in tariffs are unenforceable. (Mavirazon Compañía Naviera v Baker & Bro., 494 F Supp 1023.)
No proof regarding actual notice of the tariff provisions was introduced. Therefore, this court will not give effect to defendant’s tariff provisions limiting its liability.
Based upon the declaration by the shipper of the nature and value of the shipment pursuant to subdivision (5) of section 1304 of COGS A the court finds that defendant’s liability is not limited to $500.
Plaintiff, having established prima facie that 25 drums of lime oil were delivered to the carrier in good order and condition, and defendant not having rebutted this showing, is entitled to judgment in the amount of $3,332.91, with costs and interest from August 8,1979. This amount represents the value of the lime oil contained in one drum as stipulated to by the parties at trial.

. Although this area is primarily governed by Federal law and is interpreted by Federal courts this court has considered COGSA and the Federal statutory provision concerning establishment of a prima facie case in cargo damage actions. In Paquet & Co. v Dari Containerline Co. (74 Misc 2d 352) this court held that a clean bill of lading established prima facie, pursuant to COGSA, that the goods were in good condition when received by the carrier notwithstanding the fact that the shipment was containerized. This holding was cited by the United States Court of Appeals for the Fifth Circuit in Stevenson & Co. v 81,193 Bags of Flour (629 F2d 338).

. In The Niel Maersk (supra) a shipment of fishmeal was found to be damaged upon arrival at its destination. The court held that the deterioration of the fishmeal could not have been detected upon an external inspection since the fishmeal was contained in large bags. Accordingly, the clean bill of lading was only prima facie evidence to the good order of the bags at loading and not the fishmeal. A prima facie case of damage to the fishmeal was not established since the consignee could not prove delivery of the fishmeal to the carrier in good condition through the clean bill of lading.

. Rule 12(b) of defendant’s tariff provides, in pertinent part, “Unless ad valorem rates are specifically provided for in individual rate items, and the shipper desires to be covered for a value in excess of US $500.00 per package, the shipper must so stipulate in carriers’ bill of lading covering such shipment. Such additional liability will only be assumed by the carriers at the request of the shipper and upon payment of an additional charge of two percent (2%) on the excess value declared over US $500.00 per package”.
Rule 2(c)-3 provides that “shippper is obliged to declare in the bill of lading the F.O.B. value of the merchandise. This declaration is strictly for the purpose of assessing the correct freight rate and does not alter the liability of the carriers”.