WILLIAMS DENTAL CO.,
INC., Plaintiff,

v.

AIR EXPRESS INTERNATIONAL,
Defendant.

No. 91 Civ. 4886 (MBM).

United States District Court,
S.D. New York.

June 23, 1993.

Frank M. Marcigliano, Brenda A. Winter-holder, Marcigliano & Campise, New York City, for plaintiff.

Paul H. Murphy, John K. McElligott, Donovan Parry Walsh & Repetto, New York City, for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff sues to recover the $23,474.50 value of a shipment of dental gold and equipment which plaintiff alleges defendant lost during transport from New York to Sweden, and moves for summary judgment as to that value. Defendant moves for summary judgment dismissing plaintiff's complaint, or, in the alternative, limiting its liability to $1,262.93. Jurisdiction is based on 28 U.S.C. § 1331, the case being one that arises under the Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000, T.S. 876, *reprinted in* 49 U.S.C. § 1502 note (1976) (the "Warsaw Convention"). For the reasons stated below, plaintiff's motion for summary judgment is granted in the amount of $20,370, and defendant's motion is denied.

### I.

Plaintiff Williams Dental Co., Inc. supplies dental equipment. (Compl. ¶¶ 1–3) Defendant Air Express International transports property as a common carrier, pursuant to a permit issued by the United States Depart-

ment of Transportation. 49 U.S.C.App. § 1372. (Compl. ¶¶ 4–5)

Plaintiff alleges that on or about August 14, 1990, it received an order for 50 ounces of dental gold and equipment.[1] Plaintiff's employees obtained and double-checked the gold, packaged and sealed it in a pail, and boxed the pail for shipment. (Nelson Aff. ¶ 8; Wolski Aff. ¶ 8; Weber Aff. ¶ 9; Wilson Aff. ¶ 8)

On August 21, 1990 defendant picked up plaintiff's shipment and put it on a flight from New York to Sweden. (Pl. Mem. Ex. D; Root Tr., Ex. C. at 75–77) The shipment was delivered on August 28, 1990, (Pl. Mem. Ex. E) but the safety seals on the pail were broken and the gold was missing. (Fleming Aff. Ex. 6, ¶ 14)[2] Plaintiff submitted a claim for the value of the missing gold on August 31, 1990, but defendant denied the claim. (Fleming Aff. Ex. 7) Plaintiff commenced this action on July 18, 1991, claiming (1) breach of contract, (2) negligence, and (3) breach of a bailment. (Compl. ¶¶ 11, 15, 20)

Defendant claims that during August 1990 it had a valid tariff which included under the heading "SHIPMENTS NOT ACCEPTABLE" the following entry:

4. Gold and silver bullion, dust, concentrates, alloys, cyanides, precipitates, or any form of uncounted gold or silver, dore bullion; Gallium; Iridium, Osrium, Palladium, Phodium, Puthenium, Platinum.

(Thompson Aff. Ex. C., at 14) The tariff stated that its primary purpose was "to document the general rules which govern the transportation of [shipments]." (*Id.* at 6) In addition to listing unacceptable items for shipment, the tariff provided that the shipper "shall not be liable for loss of money, negotiable instruments, bullion . . . when shipped as personal effects . . . worn by an individual, used, not for resale." (*Id.* at 45)

Although the parties previously had requested additional discovery as to certain issues and witnesses, in a letter dated May 23, 1993 counsel for both parties stipulated that:

1. The plaintiff's witnesses would have testified that the "Will Ceram Y" was packed and sealed in the container destined for Sweden; and

2. The defendant's witness would have testified that the tariff attached as an exhibit to defendant's affidavit was defendant's tariff on the date of the loss.

(Pl. 5/23/93 Let.)

The parties each move for summary judgment. Plaintiff argues that defendant should pay $23,474.50 to plaintiff, the amount plaintiff declared the shipment was worth; defendant argues that under the Warsaw Convention plaintiff should recover substantially less.

## II.

Fed.R.Civ.P. 56(c) requires a summary judgment if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987).

However, the mere existence of disputed factual issues is insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The disputed issues of fact must be "material to the outcome of the litigation," *id.* 804 F.2d at 11, and must be backed by evidence that would

---

1. Specifically, DVT Dental AB Order 1828 requested delivery of "50 oz. Will Ceram Y" (dental gold) and "5 kit Fortune Reinforced Porcelain Matrix System" (dental equipment). (Fleming Aff. Ex. 1)

2. The consignee DVT Dental AB reported: "We have today received the consigument (*sic*), but *without* the Gold! We only received the empty bucket!" (Fleming Aff. Ex. 6) (emphasis in original)

438

allow "a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* With respect to materiality, "substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### A.

■ At the outset, there is no genuine issue of fact as to whether the shipment contained gold. To establish its *prima facie* case, plaintiff must demonstrate that the goods were delivered to defendant in good condition. *M. Golodetz Export Corp. v. S/S Lake Anja,* 751 F.2d 1103, 1109 (2d Cir.), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2361, 86 L.Ed.2d 261 (1985); *Gordon H. Mooney, Ltd. v. Farrell Lines, Inc.,* 616 F.2d 619 625 (2d Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980). "Whether the [goods were] delivered in good condition is a question of material fact." *B.R.I. Coverage Corp. v. Air Canada,* 725 F.Supp. 133, 140 (E.D.N.Y.1989).

■ When a shipper packs goods for shipment and the packing is sealed, "apparent good order and condition" means only that the goods were properly packed for shipment. *Caemint Food Inc. v. Brasileiro,* 647 F.2d 347, 352–53 (2d Cir.1981); *Phillipp Bros. v. MV "Sabogal",* 490 F.Supp. 975, 981 (S.D.N.Y.1980). In this case, because sealing and packaging effectively prevented defendant from observing the condition of the contents of the shipment at the time of delivery, the clean air waybill is probative only of external condition of the shipment, not the "good condition" of the contents. *Arkwright–Boston Mfgs. Mut. Ins. Co. v. Intertrans Airfreight Corp.,* 777 F.Supp. 103, 107 (D.C.Mass.1991); *D.P. Apparel Corp. v. Roadway Express, Inc.,* 736 F.2d 1, 4 (1st Cir.1984) ("where the contents of the shipment are not visible or open for inspection, additional direct and affirmative proof is necessary to show that the [goods were] in good condition when delivered").

■ However, plaintiff submitted four affidavits in which its employees describe how they obtained and double-checked the gold, packaged and sealed it in a pail, and boxed the pail for shipment. (Nelson Aff. ¶ 8; Wolski Aff. ¶ 8; Weber Aff. ¶ 9; Wilson Aff. ¶ 8) Defendant does not dispute that the shipment was delivered sealed in "apparent good condition." Instead, defendant admits that plaintiff's witnesses would have testified that the "Will Ceram Y" was packed and sealed in the shipment destined for Sweden, but offers several arguments about the credibility of testimony by those "eleventh hour" witnesses. (Def. Sur–Reply Mem. at 1) Defendant's arguments alone do not show that there is a material issue of fact as to whether the sealed pail contained gold, and defendant offers no evidence to support those arguments.

All of the evidence, including the stipulation by defendant as to the testimony of certain of plaintiff's witnesses, demonstrates that the shipment contained gold. Defendant cannot avoid a summary judgment merely by hypothesizing that the pail may not have contained gold.

### B.

■ In addition, there is no genuine issue of material fact as to whether plaintiff may recover the declared value of the shipment despite defendant's contention that its tariff specifically prohibited the shipment of gold. (Def. Mem. at 2) This case is governed by the Warsaw Convention, which applies to "all international transportation of ... goods performed by aircraft for hire." 49 U.S.C. § 1502 note; *see B.R.I. Coverage Corp. v. Air Canada,* 725 F.Supp. at 135. Contracting parties may adopt the terms of the Warsaw Convention, *id.* ("[t]he Convention applies as a matter of contract because the air waybill incorporates the Warsaw Convention by reference") and the air waybill at issue here incorporates the Warsaw Convention by

reference. (Pl. Mem. Ex. D.; Fleming Aff. Ex. 4)

Warsaw Convention Article 22 Clause (2) provides that:

[i]n the transportation of ... goods, the liability of the carrier shall be limited to a sum of [$9.07 per pound] of goods, unless the consignor has made ... a special declaration of the value at delivery and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum....

49 U.S.C. § 1502 note; *see Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984). Therefore, if plaintiff had not declared a special value for the shipment, defendant's liability would have been limited to $9.07 per pound.

1.

■ However, plaintiff chose not to be bound by this limit. Instead, plaintiff declared a special value for the entire shipment of $23,474.50. (Pl. Mem. Ex. D; Fleming Aff. ¶ 12) Plaintiff claims that it declared separately a value for customs of $21,680.00 for the pail of "Will Ceram Y." (*Id.*)

An Article 22 "special declaration" is intended to apprise the carrier "of the risk it assumes in providing carriage for a valuable shipment and to allow it to take the necessary steps to minimize that risk." *B.R.I. Coverage Corp. v. Air Canada*, 725 F.Supp. at 138–39 (quoting *Orlove v. Philippine Air Lines, Inc.*, 257 F.2d 384, 387–88 (2d Cir.), *cert. denied*, 358 U.S. 909, 79 S.Ct. 230, 3 L.Ed.2d 230 (1958)). In other words, a shipper such as plaintiff declares a special value to increase the carrier's liability beyond the limit specified by the Warsaw Convention.

The cases support plaintiff's expectation that in the event of loss it would receive the declared value of the lost shipment, not the Warsaw Convention value. For example, although the plaintiff in *Orlove v. Philippine Air Lines* had not declared the value of his shipment, the Court noted that "[i]t is clear that had the plaintiff declared the value of his shipment to the [shipper, the shipper] would be liable to the plaintiff for the full value of his loss." 257 F.2d at 387. In that case, the Court found that the plaintiff could recover the full value of a lost jewelry shipment, because by the time the package was delivered the plaintiff "had already declared its value and had impliedly agreed to an increased freight charge." 257 F.2d at 388. Moreover, although *Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 104 S.Ct. 1776 (1984) did not involve a special declaration, the Supreme Court noted in that case that "[h]ad such a declaration been made, and an additional fee paid, [the shipper] would have been able to recover in an amount not exceeding the declared value." 466 U.S. at 246 n. 2, 104 S.Ct. at 1779 n. 2 (citing Warsaw Convention, Art. 22(2)). *See also Johnson v. American Airlines, Inc.*, 834 F.2d 721, 723 (9th Cir.1987) (Warsaw Convention presumption of limited liability applies "unless a higher value is declared and extra tariff paid"); *Da Rosa v. Tap Air Portugal*, 796 F.Supp. 1508, n. 1 (S.D.Fla. 1992) (Warsaw Convention limitation applies when no excess value has been declared); *Manufacturers Hanover Trust Co. v. Alitalia Airlines*, 429 F.Supp. 964, 969 (S.D.N.Y. 1977) (shipper of bank notes who paid supplemental valuation charge could recover declared value).

Defendant argues that although the terms in the air waybill govern the contract of carriage, plaintiff is not entitled to recover any amount beyond that specified in the Warsaw Convention, because the air waybill is subject to defendant's valid tariffs. *See I.L.T.A., Inc. v. United Airlines, Inc.*, 739 F.2d 82, 86 (2d Cir.1984); *B.R.I. Coverage Corp. v. Air Canada*, 725 F.Supp. at 135.[3]

---

**3.** Defendant argues also that under the common law of bailments, the carrier, as bailee, is not liable for loss of property if it did not know that the shipment contained property of the type which the carrier does not hold itself out as willing to accept for carriage. Although some cases support defendant's argument, *see, e.g., St.*

*Paul Fire and Marine Ins. Co. v. Chicago Union Station Co.*, 253 F.2d 441 (7th Cir.), *cert. denied*, 358 U.S. 830, 79 S.Ct. 49, 3 L.Ed.2d 68 (1958) (train not liable for bags containing jewelry even though passenger stated that contents of bags were valuable); *Crosby v. 20 Fifth Avenue Hotel Co.*, 173 Misc. 604, 17 N.Y.S.2d 498 (1st Dep't

Before deregulation, carriers were required to file tariffs with the Civil Aeronautics Board, and when tariffs were so filed they were deemed as a matter of law to be known to and binding upon shippers. *See, e.g., Neal v. Republic Airlines Inc.*, 605 F.Supp. 1145 (N.D.Ill.1985). However, defendant admits that as a consequence of deregulation, tariffs no longer need be filed.

Notwithstanding the absence of a filing requirement, defendant argues that its tariff prohibiting the shipment of gold is binding on plaintiff as part of the contract of carriage. (Def. Mem. at 2–3) Plaintiff has stipulated that on the date of the loss, defendant maintained a tariff which stated that shipments containing gold were not acceptable for carriage. (Pl. 5/23/93 Let.) However, even assuming that defendant's tariff was valid on the date of shipment, there is no genuine issue of fact as to whether the tariff bars plaintiff's recovery of the additional declared value. Once plaintiff declared a special value for shipment, paid an additional shipping charge, and provided information that its shipment contained gold, it then became defendant's obligation either to enforce its tariff by refusing shipment, or to accept shipment at the declared value and the consequences of doing so.

### 2.

The undisputed facts in this case support such a finding. In its shipper's letter of instruction ("SLI"), plaintiff listed a Schedule B Commodity Number for the shipment. (Pl. Mem., Ex. F) The Schedule B Commodity Number is used for United States Customs purposes and is a Customs requirement. According to the Harmonized Tariff Schedule of the United States, the Schedule B Commodity Number in the SLI—7108.13.-5000—refers to a type of gold. (Fleming Aff. ¶ 11, Ex. 5) Plaintiff argues that "defendant was well aware that the Schedule B number which appeared in the description portion of the SLI referred to a particular commodity of high value." (Pl. Mem. at 9) Defendant admits that it maintained a Schedule B Com-

modity Book, and acknowledges that the Schedule B Commodity Number is "a universal number used by all freight companies and any transportation company." (Murphy Aff. Ex. 3, Root Dep. at 97–98) Defendant does not dispute that defendant previously had shipped plaintiff's goods, including Will Ceram Y, and that plaintiff had described its shipments as "dental supplies." (Reply, Ex. H, Fleming Dep. at 82)

■ Although some cases have said that "the tariff becomes part of the contract between the parties," *see, e.g., North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233 (2d Cir.1978) (citing cases), other cases have held "[b]ills of lading are contracts of adhesion, and any ambiguities are strictly construed against the carrier." *Allied Chemical Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 482 (2d Cir.1985), *cert. denied*, 475 U.S. 1099, 106 S.Ct. 1502, 89 L.Ed.2d 903 (1986). Whether or not the tariff is viewed as part of the contract between the parties, tariff provisions nevertheless should be interpreted narrowly and, generally, against the carrier. *See, e.g., Atlantic Mutual Ins. Co. v. Companhia de Navegacao Maritima Netumar*, 113 Misc.2d 516, 449 N.Y.S.2d 588 (Civ.Ct. 1982), *aff'd*, 120 Misc.2d 667, 467 N.Y.S.2d 497 (1st Dep't 1983) (exculpatory terms in tariffs should be construed narrowly and tariff provisions are unenforceable absent actual notice).

■ Moreover, the Warsaw Convention treats tariffs that apply to passengers differently from those that apply to shippers. A passenger's ticket normally states that the contract of carriage is subject to tariff regulation, and the law is well settled that passengers are conclusively deemed to have notice of a tariff on file with the Civil Aeronautics Board, even if they do not receive actual notice of it. *See, e.g., Republic Nat'l Bank of New York v. Eastern Airlines, Inc.*, 639 F.Supp. 1410, 1418 (S.D.N.Y.1986) (citing cases), *aff'd*, 815 F.2d 232 (2d Cir.1987).

1940) (hotel not chargeable as bailee for valuable antique because hotel was not given notice that trunk contained anything but ordinary luggage), the common law of bailments predates and is distinguishable from the body of federal law that has developed in response to the Warsaw Convention and the deregulation of the domestic airline industry, and that this Court applies here.

For carriers, the declared value limitation of liability has survived deregulation of the airline industry as part of the federal common law of air carrier liability. *Welliver v. Federal Express Corp.*, 737 F.Supp. 205, 207 (S.D.N.Y.1990) (limiting liability for two watercolor paintings to $500 as provided on the airbill contract); *Commodities Recovery Corp. v. Emery Worldwide*, 756 F.Supp. 210 (D.N.J.1991) (federal common law governs interpretation of air waybill). Accordingly,. although shippers generally are charged with notice of applicable tariff provisions, when a carrier is attempting to limit its liability, the carrier must show more than an appropriate tariff schedule; the carrier must show, among other things, that liability was limited by written agreement. *Baker Perkins, Inc. v. Midland Moving and Storage Co.*, 920 F.2d 1301, 1307 (6th Cir.1990). In this case, there is no evidence of a written agreement as to defendant's tariff, and the description of prohibited shipments appeared only in the tariff, not in the air waybill contract. *Contrast North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d at 233. Moreover, despite defendant's assertion that "plaintiff was on constructive, if not actual notice of [defendant's]· tariff," (Def. Sur–Reply Mem. at 9) there is no evidence that plaintiff was actually aware of the tariff's provisions. Therefore, this case does not address the question of what amount a shipper may recover under the Warsaw Convention when the shipper declares an additional value for shipment, but also has actual notice of a tariff provision prohibiting shipment of certain items.

In addition, allowing plaintiff to recover the specially declared value is consistent with Article 23 of the Warsaw Convention: "[a]ny provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this convention shall be null and void...." 49 U.S.C. § 1502 note. In general, a liability limitation is enforceable if (1) it resulted from a fair, open, just, and reasonable agreement between carrier and shipper, entered into by the shipper for the purposes of obtaining the lower of two or more shipping rates proportioned to the amount of risk, and (2) the shipper was given the option of additional recovery upon paying a greater rate. *Welliver v. Federal Express*, 737 F.Supp. at 207 (citing cases) (finding Federal Express liable for the full value of two lost paintings). In determining whether these requirements for enforceability have been met, courts have considered such factors as (1) whether the carrier has . given adequate notice of the limitation of its liability to the shipper, (2) the economic stature and commercial sophistication of the parties, (3) the availability of "spot" insurance to cover ·a shipper's exposure. *Id.*, 737 F.Supp. at 207 (quoting *United States Gold Corp. v. Federal Express Corp.*, 719 F.Supp. 1217, 1225 (S.D.N.Y.1989)). The reasonableness of notice is a question of law to be determined by the court. *Welliver v. Federal Express*, 737 F.Supp. at 207 (citing *Deiro v. American Airlines, Inc.*, 816 F.2d 1360, 1364 (9th Cir. 1987)). Although defendant does not seek to limit its liability to an amount below that specified by the Warsaw Convention, defendant does seek to limit its liability through its tariff to an amount below the "full actual damages" specified in an air waybill valid under the Warsaw Convention. *See Baker Perkins, Inc. v. Midland Moving and Storage Co.*, 920 F.2d at 1307. Therefore, to the extent defendant's tariff tends to "relieve the carrier of liability" under Article 23, that liability·limitation is not enforceable, because there is no evidence that defendant, a commercially sophisticated carrier, gave plaintiff adequate notice of the tariff.

Holding defendant liable for the declared value of the shipment also is consistent with the·goal of the Warsaw Convention to regulate uniformly the liability of international air carriers. The Second Circuit already has held that one who ships goods at a declared value substantially *below* their actual net worth in order to receive a reduced freight rate "is gambling that the goods will not be lost [and if] such loss occurs, the shipper ... should not be entitled to recover the full value of the goods...." *Perera Co. v. Varig Brazilian Airlines, Inc.*, 775 F.2d 21 (2d Cir.1985).

This case presents the converse of *Perera*—plaintiff shipped goods at a declared value substantially *above* the Warsaw Con-

vention's liability limit and paid an increased freight rate. If a shipper who specifically declares a value less than full value and pays the corresponding lower rate may recover only the declared value, then a shipper, such as plaintiff, who declares a greater value (up to the actual value of the goods) and pays the corresponding greater rate also should recover the declared value. Such a rule applies uniformly to those shippers who declare a special value and pay the corresponding freight rate—all would recover the declared value.

Moreover, defendant relies primarily on cases that do not implicate and are inconsistent with the Warsaw convention. For example, in *Angela Cummings, Inc. v. Purolator Courier Corp.*, 670 F.Supp. 92 (S.D.N.Y. 1987), the Court limited the carrier's liability for a jewelry shipment to the $500 maximum specified by the carrier's tariff for jewelry. However, the Court relied on the federal common law rule in this Circuit for the loss of goods during *interstate* transportation, not the separate body of federal statutory and common law under the Warsaw Convention. 670 F.Supp. at 94–95. Moreover, although the shipper in that case declared that the value of the shipment was $25,000 and paid an "excess value charge" for shipping, the shipper wrote nothing on the bill of lading in the space marked "Contents–Description," and did not provide any information to indicate that jewelry—an "article of extraordinary value" under the tariff—was being shipped. 670 F.Supp. at 95. In contrast, plaintiff here provided a Schedule B number which indicated that its shipment contained gold. Although defendant relies also on *North American Phillips Corp. v. Emery Air Freight Corp., supra*, that case involved an interstate shipment for which the shipper did not declare a value greater than the tariff's liability limitation. 579 F.2d at 231. Finally, unlike cases cited by defendant—including *Angela Cummings v. Purolator Courier, supra*—here, there is no evidence that "the shipper was fully aware that the carrier would not be liable," (Def. Mem. at 12) *i.e.,* evidence that plaintiff was actually aware of the tariff provisions prohibiting shipment of gold.

In sum, there is no genuine issue of fact that plaintiff told defendant the shipment contained one pail and two boxes of dental supplies worth almost $25,000, and supplied the Schedule B number for gold. Defendant accepted an additional rate to ship the package, based on its additional declared value. Thus, plaintiff provided information sufficient to notify defendant that the shipment contained gold. It was then up to defendant, a commercially sophisticated carrier, either to enforce its own tariff or to assume the additional risk associated with the increased shipping rate. In other words, because plaintiff declared that the shipment was worth far more than the Warsaw Convention limitation of $9.07 per pound, provided enough information to indicate that the shipment contained an item prohibited by defendant's tariff, and has not been shown to have been actually aware that the tariff prohibited the shipment, defendant is liable notwithstanding the existence of the tariff.

III.

As to the amount of defendant's liability, there is no genuine issue of fact as to the following: First, according to the shipper's letter of instruction, the entire shipment weighed 29 kilograms, of which 1.56 kilograms was gold. (Pl. Mem., Ex. D at 1) Second, the declared value of the entire shipment was $23,474.50, and the declared value for customs was $21,680. (*Id.*) Third, defendant's tariff provided that the liability of defendant "shall be limited to ... the declared value for carriage set forth on the face of the airbill...." (Thompson Aff., Ex. C at 45) The tariff provided further that "[i]n the event of partial loss or damage, the liability of the [defendant] with respect to the undelivered or damaged portion shall be reduced proportionately on the basis of weight, notwithstanding the value of any part of the consignment or contents thereof." (Thompson Aff., Ex. C at 45) The tariff did not define "partial loss."

Defendant argues that its maximum liability is $1,262.93. That amount is derived from two sources: (1) the gold weighed 1.56 kilograms—5.4 percent of the 29 kilogram shipment—and (2) 5.4 percent of the declared

value of $23,474.50 is $1,262.93. Defendant argues that $1,262.93 is adequate, because if plaintiff had not declared a special value for the shipment, plaintiff could have recovered much less—only $9.06 per pound, or $31.20. However, the $1,262.93 amount, adequate or not, is not based on any facts, or on any law, other than defendant's creative argument.

■ Defendant is correct that when the lost or damaged goods constitute less than the entire shipment, the Warsaw Convention's liability limitation applies to the actual weight of the lost or damaged goods, not the weight of the entire shipment. *See, e.g., Hartford Fire Ins. Co. v. Trans World Airlines, Inc.,* 671 F.Supp. 693, 694 (C.D.Cal. 1987); *Deere & Co. v. Deutsche Lufthansa A.G.,* 621 F.Supp. 721, 722 (N.D.Ill.1985). Recovery based on a shipment's gross weight is permitted only when damage to a portion of a shipment affects the value of the entire shipment. *See B.R.I. Coverage Corp. v. Air Canada,* 725 F.Supp. at 139 (citing cases). Otherwise, a shipper's liability would be the same for a partial loss as for the loss of an entire shipment.

■ When goods are shipped pursuant to the Warsaw Convention's liability limitation, there is no concern that any one portion of the shipment is more valuable than any other. Consequently, the liability limitation applies equally to any lost portion of the shipment. However, the same rationale does not hold when the shipper has declared an additional value and paid a supplemental sum, as provided by Article 22(2). *See Hartford Fire Ins. v. Trans World Airlines,* 671 F.Supp. at 694. When a shipper declares an additional value, one portion of the goods shipped is often more valuable than the rest. For example, in this case, there is no dispute that the gold in the pail was worth more than the pail itself and the other dental supplies. Accordingly, the shipper who declares a separate value is no longer limited to a recovery based proportionately on the weight of the lost or damaged portion of the shipment. Otherwise, the shipper could recover the additional declared value only if the entire shipment was lost, or—if only the most valuable portion of the shipment was lost—if the lost portion was also the heaviest. Essentially, defendant's argument is that plaintiff declared that the value of the shipment was $23,474.50—not coincidentally the approximate value at the time of 50 ounces of gold [4]—and paid an additional shipping charge which corresponded to a shipment worth $23,474.50, but expected to receive only $1,262.93 if the gold, but not the pail and dental supplies, was lost. According to defendant's argument, a shipper who ships an expensive but lightweight item in an inexpensive but heavy container (or with other inexpensive but heavy items) may not recover the value of the expensive item unless the entire shipment is lost; alternatively, if only the expensive item is lost, the shipper may recover only a fraction of that item's declared value.

■ Defendant's argument is not supported by any case law under the Warsaw Convention. In contrast, the special declaration provision of the Warsaw Convention is a simple bright-line liability rule for lost international shipments: if the shipper declares an additional value for a shipment, and pays an additional shipping charge, the carrier is liable for that value if the shipment is lost.

Nevertheless, defendant is correct that plaintiff may recover only for that portion of the shipment which was actually lost. Although the SLI stated that the pail weighed 1.56 kilograms, or 55.03 ounces, the pail contained only 50 ounces of gold. Moreover, only the gold was lost, not the pail or other dental equipment. (Fleming Aff., Exs. 1–3) Under Section 22(2) of the Warsaw Convention, a shipper may not declare a value for a shipment greater than its market value and then recover that amount if the shipment is lost. Therefore, the maximum plaintiff may recover for the lost gold is its market value. The amount listed on plaintiff's invoice—$21,680—is consistent with the market price of gold on August 21, 1990. (Fleming Aff., Ex. 3) The additional declared amount—

---

4. On August 21, 1990 gold prices fell $2.70 per ounce on the New York COMEX to a closing price of $407.40. *See* Stephen Goldstein, Persian Gulf Uncertainty Keeps Market Sliding, The Washington Times, August 22, 1990, at C1.

$1,794.50—relates to the other dental equipment, which was not lost and for which plaintiff may not recover.

For the reasons stated above, plaintiff's motion for summary judgment is granted in the amount of $20,370, and defendant's motion for summary judgment is denied. Settle judgment on 10 days' notice.

SO ORDERED.