GENERAL ELECTRIC COMPANY et al., Appellants-Respon-

dents, v PRIORITY TRANSPORT SERVICES, INC., Respondent-Appellant, et al., Defendant. [625 NYS2d 755] —Peters, J. Cross appeals from an order of the Supreme Court (Lynch, J.), entered November 28, 1994 in Schenectady County, which, upon reargument, *inter alia,* adhered to its prior decision denying plaintiffs' motion to strike the second affirmative defense in the amended answer of defendant Priority Transport Services, Inc.

In January 1988, plaintiff General Electric Company agreed to perform repair work on a turbine rotor valued at $3 million owned by plaintiff Great Southern Paper Company. General Electric contacted defendant Priority Transport Services, Inc., a general commodities carrier, to transport the rotor from Great Southern's plant in Georgia to General Electric's plant in the City of Schenectady, Schenectady County.

Paul Montarello, president of Priority, testified that he initially quoted Jack McGillin, General Electric's traffic supervisor, a price of $1,400 or $1,500 to transport the rotor. In response to McGillin's inquiry regarding the purchase of insurance for the rotor's transport, Montarello contends that he quoted an additional price of $2,600. Priority further alleges that, despite several inquiries to verify whether General Electric sought to have Priority purchase the insurance, McGillin never confirmed that he wanted such insurance either prior to the pick up or at the time thereof. Conversely, McGillin testified that he was quoted $2,850 for the cost of shipment and insurance and was assured by Montarello that insurance would be obtained. On the day that the rotor was picked up from Southern Paper, McGillin testified that he was reassured by Montarello that insurance was procured.

On January 18, 1988, the truck transporting the rotor was involved in an accident, causing damage to the rotor. Plaintiffs thereafter commenced this action against Priority and the driver of the truck alleging, *inter alia,* breach of contract, breach of contract of bailment and negligence. Priority acknowledged liability for the damage to the rotor, yet alleges, *inter alia,* as an affirmative defense that its liability is limited pursuant to its tariff on file with the Interstate Commerce Commission (hereinafter ICC).

Plaintiffs moved to strike the various affirmative defenses interposed by Priority, which included the limitation of liability defense. Priority cross-moved for summary judgment on the issue of the limitation of liability or, in the alternative, for an order denying plaintiffs' motion to dismiss that affirmative

defense. Supreme Court denied the motion and cross motion finding issues of fact. Thereafter, Supreme Court granted plaintiffs' motion to reargue but adhered to its prior decision. Plaintiffs and Priority cross-appeal.

It is well settled that shipment of property is subject to the provisions of the Carmack Amendment to the Interstate Commerce Act *(see,* 49 USC §§ 10703, 10730, 11707), which imposes absolute liability upon carriers for the actual value of goods lost or damaged during transport *(see, Missouri Pac. R. R. Co. v Elmore & Stahl,* 377 US 134, 137; *Howe v Allied Van Lines,* 622 F2d 1147, 1157, *cert denied* 449 US 992). However, 49 USC § 11707 (c) (4) and 49 USC § 10730 (b) (1) and (2) allow a carrier to limit its liability for loss or damage if it "maintains and charges I.C.C approved [choice of] lower [freight] rates, obtains the shipper's agreement to the released value in writing, and provides the shipper with a reasonable opportunity to pay a higher rate and thereby increase the carrier's liability" *(W.C. Smith, Inc. v Yellow Frgt. Sys.,* 596 F Supp 515, 517; *see, Anton v Greyhound Van Lines,* 591 F2d 103; *Flying Tiger Line v Pinto Trucking Serv.,* 517 F Supp 1108).

Here, it is undisputed that Priority had on file with the ICC a tariff which sets forth, in pertinent part, as follows:

"Shippers should state specifically in writing, when freight tendered is valued at more than $250,000.00 per shipment per vehicle. * * *

"In the event shipper fails to notify carrier that freight tendered is valued at more than $250,000.00 per shipment per vehicle, carrier's liability will not exceed $250,000.00 per shipment per vehicle."

The tariff also contains a "released value" provision which provides for higher rates to be paid by the shipper in exchange for greater liability to be imposed upon the carrier. It is undisputed that plaintiffs had actual notice of the tariff and the released value provision *(see, Mavirazon Cia Naviera v H. J. Baker & Bro.,* 494 F Supp 1023; *Atlantic Mut. Ins. Co. v Companhia de Navegacao Maritima Netumar,* 113 Misc 2d 516, 522, *affd* 120 Misc 2d 667).

A limitation of liability provision in a bill of lading is specifically permitted by the Carmack Amendment *(see,* 49 USC § 10730 [b] [1], [2]; § 11707 [c] [4]; *see also, Flying Tiger Line v Pinto Trucking Serv., supra).* The bill of lading here was a standard form prepared by Southern Paper which included the following notation: "NOTE—Where the rate is dependent on value, shippers are required to state specifically

in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding _____." While Southern Paper did not set forth a value of the rotor on the bill of lading, it is undisputed, at the very least, that Priority had oral notice of its value.

Generally, where a bill of lading is silent as to a declaration of value and a tariff contains a limitation of liability, that limitation of liability will be upheld (see, Mechanical Technology v Ryder Truck Lines, 776 F2d 1085, 1086), particularly where, as here, the shipper is deemed to be a sophisticated shipper. Yet the failure to properly complete a bill of lading does not necessarily mean that the shipper agreed to voluntarily limit the liability of the carrier pursuant to its tariff (see, New York, New Haven & Hartford R. R. Co. v Nothnagle, 346 US 128; Mechanical Technology v Ryder Truck Lines, supra; W.C. Smith, Inc. v Yellow Frgt. Sys., 596 F Supp 515, supra; Flying Tiger Line v Pinto Trucking Serv., supra).

In the instant case, we find that summary judgment was properly denied since there remains an issue of fact pertaining to the existence of an agreement to limit liability. "[T]he carrier must do more than simply maintain appropriate tariff rates in order to effectively limit its liability" (W.C. Smith, Inc. v Yellow Frgt. Sys., supra, at 517). Further questions remain as to whether the price quoted to General Electric was a choice of rates required by 49 USC § 10730 (b) (1) and (2) of the Carmack Amendment to limit a carrier's liability or simply one rate with or without insurance (see, Federal Ins. Co. v Transconex, 430 F Supp 290). Moreover, there continues to remain a factual dispute as to the actual rate which was to be charged and whether General Electric affirmatively requested the procurement of insurance.

Finally, if plaintiffs' contention that Priority did not charge the rate required by tariff is correct, there remains an issue as to whether Priority actually exercised its option to limit liability (see, Sorensen-Christian Indus. v Railway Express Agency, 434 F2d 867; Emily Shops v Inter-State Truck Line, 207 Misc 557, affd 1 AD2d 667, affd 2 NY2d 405, cert denied 355 US 827).

Accordingly, in finding the existence of material issues of fact, we affirm Supreme Court's denial of both the motion and cross motion.

Mercure, J. P., Crew III, Yesawich Jr. and Spain, JJ., concur. Ordered that the order is affirmed, without costs.