**ROYAL INSURANCE COMPANY OF AMERICA a/s/o Corning, Inc., Plaintiff,**

v.

**AIR EXPRESS INTERNATIONAL, Defendant.**

**No. 94 Civ. 8691 (LAK).**

United States District Court, S.D. New York.

Dec. 6, 1995.

James F. Campise, Eileen D. Stier, Marcigliano & Campise, for Plaintiff.

Charles E. Schmidt, Matthew T. Loesberg, Kennedy Lillis Schmidt & English, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Royal Insurance Company of America ("Royal") brought this action as subrogee of Corning, Inc., against Air Express International ("AEI") in order to recover damages for goods that Corning hired AEI to ship, and which were lost by AEI while en route to London. There is no genuine dispute that AEI is liable to Royal for the loss; the question is whether AEI is liable to Royal for the full value of the lost goods, or whether limitation of liability provisions under either the Warsaw Convention[1] or the parties' contract apply. The parties have cross-moved for summary judgment on these issues.

*Facts*

In September, 1994, Corning contracted with AEI to ship optical equipment by air from Wilmington, North Carolina, to London, England. On September 16, the equipment was picked up from Corning by a carting company acting as AEI's agent. All agree that the carter took the goods from Corning to AEI's warehouse, some two miles from Raleigh Durham International Airport. After reaching AEI's warehouse, however, the goods were never seen again. Indeed, AEI's best efforts have been unable to establish how the goods left its warehouse and where they may have gone. According to plaintiff, the lost goods were worth $148,300.90.

The shipping contract between AEI and Corning was expressed in an air waybill designated "AEI Airbill No. RDU 12WL391." Paragraph 2(a) of the conditions noted on the reverse of the waybill incorporated by reference the provisions of the Warsaw Convention, stating that "[c]arriage hereunder is subject to the rules relating to liability estab-

---

**1.** Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted in Note following 49 U.S.C. § 1502 (1988) (hereinafter the "Convention" or the "Warsaw Convention").

lished by the Convention." [2] Paragraph 2(b) noted that "[t]o the extent not in conflict with the foregoing [i.e., the Convention incorporated in Paragraph 2(a) ], carriage hereunder and other services performed by each Carrier are subject to ... applicable tariffs, rules, conditions of carriage, ..." Thus, the waybill provided that AEI's rules and tariffs would apply to the extent that the Warsaw Convention was inapplicable or not inconsistent.

Both the tariff rules incorporated into the airbill and the Warsaw Convention provide that the shipper may limit its liability in certain circumstances for loss or damage to 250 French gold francs per kilogram, converted to $9.07 per pound. The parties' dispute centers on whether the Convention applies and, if so, whether AEI has met all of the necessary conditions in order to qualify for the limitations of liability provided by the Convention.

### Discussion

The essence of plaintiff's argument is that the Warsaw Convention rather than the tariff applies and that the defendant has failed to comply with the requirements of the limitation of liability provisions of the Convention. Thus, plaintiff argues, it should be awarded the full value of its lost goods. Defendant replies that the tariff's limitation of liability provisions rather than the Convention's apply and, in any case, that defendant has met the requirements necessary to qualify for limitation of liability under the Convention. Defendant concludes that the plaintiff is only entitled to recover $9.07 per pound, or $1,868.94.[3]

### Applicability of the Warsaw Convention

The Warsaw Convention applies to "all international transportation of persons, baggage, or goods performed by aircraft for hire." Warsaw Convention, Art. 1. To the extent relevant in this case, the Convention defines "international transportation" as "any transportation in which, according to the contract made by the parties, the place of departure and the place of destination ... are situated ... within the territories of two High Contracting Parties." *Id.* Art. 1(2).[4] The Convention further provides that:

"[t]he carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air." *Id.* Art. 18(1).

The Convention goes on to define "transportation by air" for purposes of Article 18 as:

"the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or in the case of a landing outside an airport, in any place whatsoever." *Id.* Art. 18(2).

Defendant argues that, since the goods were last seen in its warehouse, the goods were not lost in "transportation by air." For example, defendant suggests that the goods might have been lost between its warehouse and the airport. The place where something was "last seen," however, is not necessarily the place where it was lost. Fortunately, the Court need not pursue the almost metaphysical aspects of this distinction, as the Convention provides that:

"The period of the transportation by air shall not extend to any transportation by land, by sea, or by river performed outside an airport. If, however, such transportation takes place in the performance of a contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed to have been the result of an event which took place during the transportation by air." *Id.* Art. 18(3).

Thus, unless, the defendant can rebut the presumption by showing where the goods actually were lost, the Court must conclude

**2.** Paragraph 1 had defined the term "Convention" as the "Convention for the Unification of Certain Rules relating to International Carriage by Air, signed at Warsaw, 12th October, 1929."

**3.** The parties dispute also the enforceability of the tariff's limitation of liability. The Court's

disposition of the case does not require consideration of that question.

**4.** The United States and the United Kingdom are High Contracting Parties.

that the goods were lost during transportation by air. *Cf. Victoria Sales Corp. v. Emery Air Freight, Inc.*, 917 F.2d 705, 707 (2d Cir.1990).

█ The defendant has offered no evidence that the goods were lost on the ground, prior to reaching the airport, except the fact that the goods last were seen in its warehouse. Where the goods actually were lost remains a matter of speculation. In these circumstances the Court adheres to the clear terms of the Convention, and holds that the goods were lost during transportation by air.

*Limitation of Liability*

Having argued successfully that the Warsaw Convention governs, plaintiff now seeks to avoid the effect of its provisions limiting the liability of carriers. Warsaw Convention, Art. 22(2). Plaintiff notes that in order to qualify for the Convention's limitation of liability, the carrier must ensure that its air waybill contains numerous specific pieces of information set forth in Article 8(a) through Article 8(i) and Article 8(q). If these so called "particulars" are not contained in the air waybill, then the carrier cannot avail itself of the Convention's limitation on liability. *Id.* Art. 9. Plaintiff notes that these provisions have been held to be unambiguous, and to require strict construction. *Maritime Ins. Co., Ltd. v. Emery Air Freight Corp.*, 983 F.2d 437, 440 (2d Cir.1993).

█ Plaintiff argues first that the waybill did not state "[t]he agreed stopping places" between Raleigh Durham and London, as it contends was required by Article 8(c). The defendant's failure to indicate on the air waybill any agreed stopping places is quite understandable. There were none.

Plaintiff offers two unconvincing bases for its contention that there were. First, plaintiff contends that AEI employees informed plaintiff that all AEI shipments from Raleigh Durham to England would pass through New York, and that therefore plaintiff implicitly agreed that the goods would stop in New York. Defendant denies that goods it ships from Raleigh Durham to London always pass through New York. In any event, however,

the statements on which plaintiff now relies to show that it had agreed that the goods were to stop in New York were made to plaintiff, or its counsel, only after the goods were lost. This "agreed" stopping place could not have been part of the contract formed on September 16, since plaintiff did not learn of it until after that date. As there were no "agreed stopping places," there was nothing for the waybill to identify.

Second, plaintiff argues that since the contract incorporated AEI's rules, tariffs, and conditions, it incorporated any schedule or timetable which AEI published for shipments from Raleigh Durham to London. Thus, plaintiff contends, any stopping places indicated on such timetables or schedules implicitly were agreed upon by the parties and should have been indicated on the waybill. Plaintiff, however, has offered no evidence that any such schedules or timetables existed. Defendant cannot have been obligated to disclose stopping places that did not exist.

Plaintiff's other effort to defeat limitation of liability under the Convention is an argument that defendant failed to indicate, or at least failed to indicate with sufficient clarity, the place of departure, as required by Article 8(b) of the Convention. Defendant replies that the box captioned "AEI Tariff Origin Code" indicated the shipment's point of origin. The waybill number entered in that box "RDU 12WL391," defendant argues, made the place of departure clear by using the IATA code "RDU" for Raleigh Durham International Airport.

The word "origin" can be used for a variety of purposes in international trade, and may not always refer to the place of departure for a shipment of goods. In the context of the AEI air waybill, however, the word "origin," when combined with the IATA code RDU, can be understood only as referring to the place of the shipment's departure.

Plaintiff contends further, however, that even if RDU might be a sufficient indication of the place of departure, it is not sufficient when it does double duty as a part of the waybill number. Plaintiff admitted at oral argument, however, that there is no logical basis for this claim, so long as the indication was clear, but relied instead on the principle

that the clear terms of the Convention should be strictly construed. Strict construction of the Convention does not require that the waybill recite an incantation containing the magic words set out in the Article 8 particulars. "Article 9 only requires that the waybill contain the ... particular[s]; it does not address the problem of slight deviations in the language." *Maritime Ins. Co. Ltd. v. Emery Air Freight Corp.*, 983 F.2d 437, 440 (2d Cir.1993). Here, AEI's use of RDU in its "origin code" is sufficient to meet the requirement of Article 8(b). Nor does the inclusion of the origin code in the airbill number render its inclusion on the airbill ineffective. The information required by the Convention was provided by the waybill. Defendant therefore is entitled to the limitation of liability provided by Article 22(2).

### Conclusion

The Court holds that the Warsaw Convention applies to this dispute because it presumes that defendant lost the goods lost in international air transportation. The Court holds also that defendant's air waybill contains all of the particulars required by Article 8 of the Convention, and that defendant's liability for the lost goods is limited to $9.07 per pound. Plaintiff's motion for summary judgment is granted as to liability and denied in all other respects. Defendant's motion for summary judgment is granted as to limitation of liability under the Warsaw Convention and denied in all other respects.

The parties agreed at oral argument that there were no factual issues, other than whether, after reaching AEI's warehouse, the goods were lost before or after they reached the airport. The parties consented to the entry of judgment if the Court determined that this disputed issue was not genuine or material. There is no genuine issue as to any material fact because the Convention's presumption that the loss took place during transportation by air controls, in the absence of any evidence to the contrary, and here there is no such evidence. Judgment there-

fore shall be entered for plaintiff in the amount of $1,859.35 [5] and the case closed.

SO ORDERED.

---

5. The damages have been calculated by multiplying $9.07 times 205 lbs., the weight of the goods as listed on the air waybill.