*207 OPINION OF THE COURT
Memorandum.
Order reversed without costs, and defendant’s motion is denied.
Plaintiff Belgian Endive (hereinafter Belgian) commenced the instant suit to recover the value of a shipment of perishable produce allegedly damaged as a result of defendant American Airlines’ (hereinafter American) negligence. The facts briefly are as follows. On or about June 18, 1993, defendant American agreed to transport a shipment of endives on behalf of Belgian, as consignee, on American direct flight AA 99 from Brussels to John F. Kennedy Airport (hereinafter JFK) on June 19,1993, pursuant to air waybill No. 25421293. It is undisputed that the goods were instead rerouted via London on flight AA 101, and arrived in New York on or about June 21, 1993. It is further uncontroverted that while the waybill provided the endives were to be packed on P6-pallets, American stacked the produce on four LD4 and two LD3 pallets. Brennan Trucking, which was authorized to pick up the shipment, arrived at JFK on June 21, 1993, but refused to accept the shipment after loading three quarters of the truck, because the entire shipment as packed could not fit in one load. The goods were stored at American’s facility at the airport. On June 22, 1993, inspection of the shipment by the United States Department of Agriculture revealed that the produce had been stored at temperatures of 73-78 degrees Fahrenheit, despite the specification on the air waybill that the goods were to be stored in a cool room. The inspection certificate further described numerous defects in the produce. Brennan picked up the produce which was in good condition on June 22, 1993. Belgian was able to salvage only $3,600 out of a shipment for which it paid $19,000. Belgian thereafter commenced the instant suit by service of a summons and complaint on or about August 12, 1995. American moved for summary judgment on the ground that Belgian’s claim for damages was subject to the Convention for the Unification of Certain Rules Relating to International Transportation by Air (49 US Stat 3000, TS No. 876, reprinted in 49 USCA § 40105 Note [Warsaw Convention]), and was time barred under the two-year limitation period of article 29 (1) of the Convention. Belgian cross-moved for partial summary judgment dismissing American’s affirmative defenses founded on the Warsaw Convention, air waybill and tariffs. In opposition to American’s motion, Belgian argued that the Warsaw Convention did not apply because American’s tender of the *208 produce on June 21, 1993, constituted “constructive delivery” thus changing American’s status from that of a carrier to warehouseman, and terminated “transportation by air” within the meaning of the Warsaw Convention. Belgian further asserted that the damages occurred after the tender of the produce, and thus argued that the three-year limitations governing negligence actions under New York law was applicable and its action timely commenced. The court below granted American’s motion for summary judgment. The court determined in substance that even assuming constructive delivery by American on June 21, 1993, Belgian had failed to raise any issues to refute the presumption under article 18 (3) of the Warsaw Convention, that the damages occurred during “transportation by air” and accordingly dismissed the complaint as time barred under the Warsaw Convention.
The Warsaw Convention, incorporated by reference in the air waybill, is an international treaty governing the rights and responsibilities of passengers, shippers and carriers in certain aspects of international air transportation (Rosman v Trans World Airlines, 34 NY2d 385; Seguritan v Northwest Airlines, 86 AD2d 658; Kahn v Trans World Airlines, 82 AD2d 696), and where the international flight falls within the Convention, “then the Convention has automatic full impact, by its own terms” (Ross v Panamerican Airways, 299 NY 88, 97, cert denied sub nom. Froman v Panamerican Airways, 349 US 947; Egan v Kollsman Instrument Corp., 21 NY2d 160, 166, cert denied sub nom. American Airlines v Egan, 390 US 1039). The primary objective of the Convention was to establish uniform rules relating to air transportation documents and to limit the potential liability of air carriers (Rosman v Trans World Airlines, supra; Eck v United Arab Airlines, 15 NY2d 53; Seguritan v Northwest Airlines, supra). Article 18 of the Convention provides in pertinent part as follows:
“1. The carrier shall be liable for damage sustained in the event of the destruction or loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.
“2. The transportation by air within the meaning of the preceding paragraph shall comprise the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft, or, in the case of a landing outside an airport, in any place whatsoever.
“3. The period of the transportation by air shall not extend to any transportation by land, by sea or by river performed *209 outside an airport. If, however, such transportation takes place in the performance of a contract for transportation by air, for the purpose of loading, delivery or transshipment, any damage is presumed, subject to proof to the contrary, to have been the result of an event which took place during the transportation by air.”
Article 29 of the Convention further states:
“(1) The right to damages shall be extinguished if an action is not brought within 2 years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the transportation stopped.
“(2) The method of calculating the period of limitation shall be determined by the law of the court to which the case is submitted.”
Contrary to the determination of the court below, there are issues of fact raised in the parties’ moving papers as to whether damages occurred during international transportation where the two-year Statute of Limitations applies pursuant to the Warsaw Convention, or whether the three-year statute applies if American’s status changed from carrier to warehouseman when it attempted to deliver the goods on June 21, 1993.