OPINION OF THE COURT
Franklin R. Weissberg, J.
This is an action for the recovery of damages resulting from a stolen shipment of goods. The plaintiff, Norton McNaughton, Inc. (Norton), manufactures ladies’ clothing. Sometime in 1996, it contracted with defendant M.S.L. Express, Inc. (MSL), to have 20,830 cartons of ladies’ suits transported from its factory in Hong Kong to a bonded warehouse in New York City. MSL was to arrange the entire trip. Towards that end, MSL hired the defendant Westrans Air Express (HK) Ltd. (Westrans), a freight forwarder, to arrange for the transport of the cargo from Hong Kong to John F. Kennedy (JFK) International Airport. Westrans, in turn, hired the defendant Polar Air Cargo (Polar Air), an air carrier, to fly the goods to JFK. On June 30, 1996, Polar Air issued an air waybill, i.e., bill of lading, for the carriage of the merchandise, contained in three pallets, from Hong Kong to Polar Air’s facility at JFK. The waybill identified *464 MSL as the consignee. That same day, the goods were shipped to JFK and arrived at the Polar Air facility. MSL hired the defendant All Pro Trucking (All Pro) to pick the merchandise up from Polar Air and bring it to All Pro’s bonded warehouse. On July 2, 1996, an All Pro truck, driven by David Romero, arrived at the Polar Air facility to take possession of the merchandise. The truck, however, was only capable of carrying two of the three pallets. After the two pallets were loaded onto the All Pro truck by Carl Brathwaite, Romero signed a carrier certificate indicating receipt of all three pallets. He advised Brathwaite that he would return in approximately 10 minutes to pick up the third pallet. Romero claims that as he was fastening the two pallets to the truck, the truck, which had been unlocked with its keys in the ignition, suddenly took off and disappeared. Brathwaite, however, has provided a different version of events, stating that Romero was, in fact, in the truck when it left the Polar Air facility. In either case, the two pallets never arrived at the All Pro warehouse. They were, however, recovered a number of months later with all but 118 of the garments.
Norton thereafter commenced this lawsuit alleging negligence and breach of contract. Westrans never appeared and All Pro, after having appeared, has been found in default. In motion sequence number 003, Polar Air has moved for summary judgment dismissing the complaint as against it and dismissing the cross claim which MSL has asserted against it. In its motion, Polar Air notes that the plaintiff has based its claims herein on the Warsaw Convention (Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 US Stat 3000, reprinted following 49 USCA § 40105). The Warsaw Convention is an international treaty governing the rights and responsibilities of passengers, shippers and carriers in connection with international air transportation. Its primary objectives are to establish a uniform procedure for dealing with claims arising out of air transportation and to limit the potential liability of air carriers. (See, Belgian Endive Mktg. Bd. v American Airlines, 176 Misc 2d 206, 208 [App Term, 2d Dept 1998].) The Warsaw Convention preempts State laws for claims covered by it while, at the same time, enabling plaintiffs to sue directly under its terms. (See, Pakistan Arts & Entertainment Corp. v Pakistan Intl. Airlines Corp., 232 AD2d 29, 31 [2d Dept 1997].)
The plaintiff’s claim against Polar Air arises under article 18 (1) of the Warsaw Convention. This article provides that an air carrier shall be liable for the loss of or damage to goods if *465 the occurrence took place during the transportation by air. Article 18 (2) defines the term “transportation by air” as comprising “the period during which the baggage or goods are in charge of the carrier.” In moving for summary judgment, Polar Air concedes that it was a carrier of plaintiff’s merchandise but argues that it cannot be liable under the Warsaw Convention because it was no longer in charge of the goods at the time that they were stolen. It asserts that its delivery of the two pallets to Romero, along with the receipt which he signed, operated to extinguish its liability for the subsequent theft. This argument is without merit. Although it is true that a carrier’s liability ends upon full delivery and acceptance of the goods which it had transported (see, Eddie Bauer, Inc. v Focus Transp. Servs., 881 F Supp 1174, 1179 [ND Ill 1995]), Polar Air had not completed the delivery of the plaintiff’s merchandise at the time of the theft. The air waybill which Polar Air had issued required the delivery to MSL of three pallets. Indeed, the receipt which Romero signed was for all three pallets. The third pallet, however, had not yet been delivered at the time of the theft. Surely, Polar Air would not argue that delivery would have been complete if all three pallets could have fit on the All Pro truck and the truck was stolen while the third pallet was still on the loading platform. There is little, if any, difference between such a scenario and the events which actually occurred. Clearly, in having Romero sign the receipt for all three pallets upon being advised that he would be back in 10 minutes to pick up the third pallet, Polar Air recognized that the transfer of the merchandise to All Pro entailed a single delivery and that the delivery would not be complete until the third pallet was picked up. Since Polar Air was therefore still in charge of the goods covered by the air waybill, its liability under the Warsaw Convention had not been extinguished at the time of the theft. Its motion for summary judgment with respect to the plaintiff, as well as to MSL, is therefore denied.
In motion sequence number 004, the plaintiff has moved for summary judgment against Polar Air and MSL on the issue of liability. Noting that, under article 20 of the Warsaw Convention, a carrier is liable for damaged or lost goods unless the carrier can establish that it took all necessary measures to avoid the damage or loss, plaintiff argues that Polar Air is liable for the theft of the two pallets because it failed to take any measures to secure the area around its storage facility so as to prevent or deter the very theft which occurred. However, it is not clear from the record whether the truck was stolen *466 while on the Polar Air premises. As noted previously, there is a conflict between the accounts given by Romero and Brathwaite. Romero claims that the truck was stolen while it was in the docking area of the facility. Brathwaite asserts that Romero was in the truck when it left the premises. This factual dispute, by itself, precludes summary judgment. In addition, the issue of whether Polar Air negligently failed to take any necessary measures to secure the area from theft is one which should be resolved at trial since it raises factual issues as to whether Polar Air knew or should have known from past experience that there was a likelihood of conduct on the part of third persons which was likely to subject a visitor such as All Pro to criminal acts unless minimal protective measures were taken. (See, Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 519-520 [1980].)
As to MSL, the plaintiffs motion for summary judgment is predicated on its contention that the company is liable under the Warsaw Convention as an indirect carrier. Although the Warsaw Convention refers only to air carriers, a number of courts have nevertheless found that a freight forwarder which does not actually fly the goods but arranges to have them flown may be an indirect common carrier subject to the articles of the Warsaw Convention. (See, e.g., Royal Ins. Co. v Fountain Technologies, 984 F Supp 724, 729 [SD NY 1997]; Martin Marietta Corp. v Harper Group, 950 F Supp 1250, 1254 [SD NY 1997]; Royal Ins. v Amerford Air Cargo, 654 F Supp 679, 681-682 [SD NY 1987].) These courts have drawn the distinction between a freight forwarder which merely acts as an export department for its shipping clients by, inter alia, securing cargo space on a carrier and ensuring that the cargo is delivered to the carrier on time and a forwarder/carrier which contracts to deliver the cargo to its destination even though others may engage in the actual transporting. (See, e.g., Royal Ins. Co. v Fountain Technologies, 984 F Supp, at 729; Zima Corp. v M. V. Roman Pazinski, 493 F Supp 268, 273 [SD NY 1980].) The factors to be considered in determining whether a party acted only as a freight forwarder or as a forwarder/carrier subject to the Warsaw Convention include (1) the way the party’s obligation is expressed in documents pertaining to the agreement, (2) the issuance of a bill of lading, and (3) how the party made its profit, i.e., whether the fee which the party charged comprised the carrier’s usual fee for a shipment of such cargo plus the party’s own fee for arranging the transport or whether the fee covered the entire transportation and reflected a profit which *467 the party made by consolidating the shipment with others. (See, Royal Ins. Co. v Fountain Technologies, 984 F Supp, at 729.)
Applying this criteria, the court is unable to conclude on the record before it that MSL should be considered an indirect carrier to which the Warsaw Convention is applicable. Although MSL appears to have charged plaintiff a single rate covering the entire transportation, the record does not indicate how the company made its profit. Most importantly, there is no evidence that MSL held itself out as a carrier and, indeed, it never issued any bill of lading as a common carrier typically would. (See, Tokio Mar. & Fire Ins. Co. v Amato Motors, 770 F Supp 426, 428-429 [ND Ill 1991], revd on other grounds 996 F2d 874 [7th Cir 1993].) In this respect, it is notable that the plaintiff has not cited any case, and the court has found none, where a freight forwarder was found to be an indirect carrier even though it had never issued a bill of lading. On the contrary, in all of the cases cited by plaintiff, the freight forwarder had, in fact, issued a bill of lading. Under the circumstances, the plaintiff’s motion for summary judgment against MSL, as well as against Polar Air, is denied.